UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ABCDE OPERATING, LLC,
THE CITY OF DETROIT, AND
LAURA LEE DEMERY, INC.,


                    Plaintiffs,


                                                    Case No. 10-13435
-vs-                                                HON. AVERN COHN


THE CITY OF DETROIT,

                    Defendant.
_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 30)

### I.  Introduction

        This is a First Amendment case involving regulation of sexually oriented

businesses (SOBs).  Plaintiff ABCDE Operating, LLC is a limited liability company that

operates The Penthouse Club, a topless bar located in Detroit, Michigan.  Plaintiff Laura

Lee Demery, Inc. is a Michigan corporation that operates Erotic City, another topless bar

in Detroit, Michigan.  Plaintiff Jane Doe is an exotic dancer who dances at The Penthouse

Club and Erotic City.  Collectively, plaintiffs filed suit against the City of Detroit (the City),

challenging recent amendments to the Detroit City Code on constitutional grounds.

        Plaintiffs' Second Amended Complaint (Doc. 26) is in three counts:

        (I) Request for Declaratory Relief, under the First and Fourteenth
        Amendment;

        (II) Request for Preliminary and Permanent Injunctive Relief, to enjoin the
        City from enforcing the Ordinance;

(III) Pendant State Claims for Declaratory Judgment, under MCR
2.605(A)(1).

On December 29, 2010, the City filed a motion for judgment on the pleadings

under Fed. R. Civ. P. 12(c), (Doc. 30), to which plaintiffs responded, (Docs. 35, 36, 37),

and the City replied, (Doc. 38).  On April 27, 2011, the Court heard oral argument on the

motion.  Following the hearing the parties entered into several stipulations which partially

resolved the motion.  (See Docs. 40, 41).

Now before the Court are the remaining two issues, resolution of which will decide

the City's motion: (1) whether plaintiffs have "cast doubt" on the City's conclusion that

adult businesses have secondary effects, and (2) whether the Court will exercise

supplemental jurisdiction over Count III of the Second Amended Complaint relating to the

City Code's fee provision.  For the reasons that follow, the Court answers "no" to both

questions.  Accordingly, the City's motion will be granted.

## II.  Background

On February 23, 2010, the Detroit City Council approved amendments to various

sections of the Detroit City Code which regulate SOBs.  A summary of the amendments is

as follows:[1]

- Semi-nude performers are required to remain on a non-portable fixed stage
at least 18 inches high (Section 5-15-7(a)(3));

- Performances are required to take place in a room of at least 600 square feet
(Section 5-15-7(a)(3));

- The room in which performances are to take place is required to have an
unobstructed view of every area of the room (Section 5-15-7(a)(3)); and

---

[1]All amendments are listed as an exhibit to the City's brief.  See Doc. 30-2.

- Employees (including performers) in sexually-oriented businesses are required to obtain an annual license fee. (Section 5-15-41 and 43).

- Those desiring to operate an adult cabaret are required to obtain a license and pay an annual license fee. (Sections 5-15-21 and 23).

- Intentional touching of the body or clothing between semi-nude employees and patrons is prohibited.  (Section 5-15-7(a)(4)).

(Doc. 30, pp. 15-16).

Since the amendments went into effect, the City has issued hundreds of citations to various SOBs, like plaintiffs.  According to plaintiffs "supervisory police personnel have threatened to do 'everything possible' to shut down the [SOBs]."  (Doc. 34, p. 15).  As a result, plaintiffs filed this case.

### III.  Standard of Review

A district court must consider a motion under Rule 12(c) using the same standard of review as a Rule 12(b)(6) motion.  Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 389 (6th Cir. 2007).  To survive a Rule 12(b)(6) motion, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007); see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007).  Only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id.; Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks and citation removed).  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."  Iqbal, 120 S.Ct. at 1950.  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  Id. at 1949

2:10-cv-13435-AC-VMM  Doc # 43  Filed 08/16/11  Pg 4 of 10  Pg ID 4986

(internal quotation marks and citation omitted). "[D]etermining whether a complaint states

a plausible claim is context-specific, requiring the reviewing court to draw on its

experience and common sense." Id. at 1940.

When considering whether to grant a Rule 12(c) or 12(b)(6) motion, a court

primarily considers the complaint's allegations, but may also take into account items

appearing in the record and attached exhibits. Amini v. Oberlin College, 259 F.3d 493,

502 (6th Cir.2001)). A court may also consider, without converting the 12(b)(6) motion

into a motion for summary judgment, "matters of which a court may take judicial notice."

Bowers v. Wynne, 615 F.3d 455, 470 (6th Cir. 2010) (citing Tellabs, Inc. v. Makor Issues

& Rights, Ltd., 551 U.S. 308, 322 (2007)). Proper subjects for judicial notice include

"matters of public record (e.g. pleadings, orders and other papers on file in another action

pending in the court; records or reports of administrative bodies; or the legislative history

of laws, rules or ordinances) as long as the facts noticed are not subject to reasonable

dispute." Pakootas v. Teck Cominco Metals, Ltd., 632 F.Supp.2d 1029, 1032 (E.D. Wash.

2009) (citing Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir.

2007); Fed. R. Evid. 201)). Moreover, because plaintiffs attached the challenged

amendments to their complaint, (Doc. 26-2), plaintiffs incorporated the legislative record

into the pleadings. Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 297 (6th Cir.

2008).

## IV. Analysis

### A. Secondary Negative Effects

The City first argues that the amendments are constitutional and that dismissal is

warranted because the amendments are designed to avoid negative secondary effects.

Plaintiffs dispute the City's rationale and argue that they have evidence which will rebut the contention that SOB ordinances, like the amendments at issue here, result in negative secondary effects.  Plaintiffs also argue that they are entitled to discovery to rebut the City's rationale.

Ordinances targeting the negative secondary effects associated with SOB are considered content neutral, and subject to intermediate scrutiny.  City of Los Angeles v. Alameda Books, Inc., et al., 535 U.S. 425, 434 (2002).  They will "be upheld so long as the [municipality] show[s] that its ordinance was designed to serve a substantial government interest and that reasonable alternative avenues of communication remained available."  Id.  A court determines whether an ordinance is "designed to serve" the substantial interests by following a burden-shifting approach.  Id. at 438-39.

First, the City must show that, in passing the challenged amendments to the Detroit City Code, it relied on "evidence that is reasonably believed to be relevant for demonstrating a connection between speech and a substantial, independent government interest."  Id. at 438.  Such evidence need not be so conclusive that the City's secondary effects theory "is the only one that can plausibly explain the data," but must only "fairly support the [City's] rationale."  Id. at 437-38.  In other words, the City's reliance on the evidence must "appeal to common sense."  Id. at 439.  On the other hand, the City cannot "get away with shoddy data or reasoning."  Id. at 438.

Here, the City's stated purpose, as described in Section 5-15-1 is as follows:

The purpose of this article is to regulate sexually-oriented businesses in order to promote the health, safety, and general welfare of the people of the City, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually-oriented businesses within the City. . . .  Further, the purpose, intent, or effect of this article is not to impose a limitation or restriction on the content of any speech that is protected by

5

the First Amendment, or to restrict or deny access to adults of speech or conduct that is speech, which is protected the First Amendment, or reasonable access to any communicative materials, including sexually-oriented materials.

Further, the City asserts that it relied on numerous land-use studies, police crime reports, judicial opinions, anecdotal data, and citizen testimony, when it determined that passing the amendments would advance the stated purpose. (See Docs. 14-1, 14-5). Finally, the City relies on Young v. American Mini Theaters, 427 U.S. 50, 71 (1976) for the proposition that ordinances regulating SOBs in Detroit have been upheld under the negative secondary effects rationale since as far back as 1976. Id. at 72-73 (finding that "the city's interest in the present and future character of its neighborhoods adequately supports its classification of motion pictures," and holding that "the zoning ordinances requiring that adult motion picture theaters not be located within 1,000 feet of two other regulated uses do[] not violate the Equal Protection Clause of the Fourteenth Amendment"). Thus, the City says it has met its burden. The Court agrees.      Based on what has been stated above, the City has established the requisite minimal connection to demonstrate that the amendments were enacted to combat negative secondary effects of SOBs. See Alameda, supra, at 434. Thus, the burden now shifts to plaintiffs to rebut the City's proffered evidence "either by demonstrating that the [City's] evidence does not support its rationale or by furnishing evidence that disputes the [City's] factual findings." Id. at 438-39 ("If [plaintiffs] succeed in casting doubt on [the City's] rationale in either manner the burden shifts back to the [the City] to supplement the record with evidence renewing support for a theory that justifies its ordinance.").

To rebut the City's evidence, plaintiffs rely on the Second Amendment Complaint in which they allege that the City's rationale is insufficient. (Doc. 26). Plaintiffs also proffer a

6

letter written to the Detroit City Council by Dr. Daniel G. Linz (Linz), which they say rebuts

the contention that anti-nudity ordinances result in negative secondary effects, such as

that stated by the City.  (Doc. 34).[2]  Finally, plaintiffs point to several articles, written

primarily by Dr. Linz, which discuss government regulation of SOBs and seek to "debunk"

the negative secondary effects rationale often invoked by governments to justify SOB

regulations.  (See Docs. 34-6, 34-7, 35-2, 35-3, 36-2, 35-6).

     In response, the City argues that plaintiffs have not sufficiently rebutted its

evidence because the articles are not specific to the amendments at issue, i.e., they do

not focus on the City of Detroit.  Further, the City argues that plaintiffs have failed to rebut

its rationale because they have not invalidated every piece of its evidence.  In support, the

City relies on Alameda Books, Inc. v. City of Los Angeles, 631 F.3d 1031 (9th Cir. 2011),

for the same proposition – that plaintiffs must invalidate every piece of evidence relied

upon by a municipality, or the municipality's motion must be granted.  Id. at 1042.

Particularly, Alameda Books, supra, at 1042, states:

> [T]o succeed in "casting doubt" on a city's evidence or rationale, a plaintiff
> must do more than point to a municipality's lack of empirical evidence . . . or
> challenge the methodology of the municipality's evidence . . . .  When a
> municipality offers multiple rationales in support of an ordinance, the plaintiff
> must address each one.  See Fantasyland Video, Inc. v. Cnty. of San
> Diego, 505 F.3d 996, 1002 (9th Cir.2007); World Wide Video v. City of
> Spokane, 368 F.3d 1186, 1196 (9th Cir.2004) (internal citations omitted).

> The Sixth Circuit has explained that the plaintiffs bear a heavier evidentiary
> burden in attempting to "cast doubt" than the municipality does in justifying
> the ordinance at the outset, and that the plaintiffs' burden will not be carried
> by "anecdotal" or "unsystematic" evidence.  Richland Bookmart v. Knox
> Cnty., 555 F.3d 512, 527–28 (6th Cir. 2009).

---

    [2]Plaintiffs assert that Dr. Linz's letter is part of the City's amendments' legislative record.  However, they say that the City intentionally failed to include it as part of the pleadings in this case in order to prevail with the secondary negative effects rationale.

Id. at 1042.  Based on the described standard, the City says plaintiffs have not succeeded

in casting doubt on its rationale.  The Court agrees.

Here, plaintiffs's proffered evidence does not rebut each one of the City's multiple

rationales for implementing the challenged amendments.  The articles are generic in

nature, arguing for a general proposition that SOBs do not cause negative secondary

effects.  The articles cannot carry the day.  They are "anecdotal" and "unsystematic"

which are not sufficient to sustain plaintiffs' burden.  As the City notes, several other

courts have rejected Dr. Linz's studies, finding them insufficient to rebut evidence of

secondary effects.  See, e.g., Imaginary Images, Inc. v. Evans, 612 F.3d 736, 748 (4th

Cir. 2010) ("So while the Linz study and others may well be of interest to legislatures or

those formulating policy, it does not provide the kind of 'clear and convincing' evidence

needed to rebut the government's showing and invalidate the regulation."); 84

Video/Newsstand, Inc. v. Sartini, 2007 U.S. Dist. LEXIS 80079, at *22 ("the court finds

that Plaintiffs' evidence from Dr. Daniel Linz is not sufficient at this stage to cast direct

doubt on Defendants' evidence of a substantial government

interest, especially in light of the fact that several courts have rejected Dr. Linz's findings

under similar circumstances."); Little Mack Ent. II v. Twp of Marengo, 625

F. Supp. 2d 570, 580 (W.D. Mich. 2008) ("Contrary to Little Mack's arguments, the

affidavit of Daniel Linz, Ph.D., which concludes that the ordinances were based on

shoddy data and flawed reasoning, does not undermine the legislative basis for adopting

the ordinances."); Pao Xiong v. City of Moorhead, 641 F. Supp. 2d 822, 828-829 (D. Minn.

2009)("concerns advocated by the Linz article is insufficient to meet the burden to cast

doubt on a municipality's reasoning, even when supplemented by additional evidence");

Doctor John's v. G. Blake Wahlen, 542 F.3d 787 (10th

Cir. 2008); J.L. Spoons, Inv. v. Dragani, 538 F.3d 379 (6th Cir. 2008).

Plaintiffs also assert that they entitled to further discovery if the Court finds it has

not proffered sufficient evidence.  This argument is not persuasive.  First, plaintiffs have

not demonstrated that further discovery is warranted, i.e., what type of evidence plaintiffs

can reasonably proffer in order to rebut each one of the City's rationales.  See Alspaugh

v. McConnell, 643 F.3d 162, 167 (upholding the denial of discovery where "further

discovery would not have changed the legal and factual deficiencies) (quoting CenTra,

Inc. v. Estrin, 538 F.3d 402, 420 (6th Cir. 2008) (quotation marks omitted).  Moreover, the

Court resolves the motion on the pleadings under Fed. R. Civ. P. 12(c), and not under

Fed. R. Civ. P. 56.  See e.g., Eastman v. Cincinnati Musicians Assoc., 151 Fed. App'x

414, 416 (6th Cir. 2005) (affirming district court's denial of motion for further discovery

because the case was decided on the pleadings, and noting that parties may be entitled

to further discovery when a court converts a motion for judgment on the pleadings under

Fed. R. Civ. P. 12(c) into a motion for summary judgment under Fed. R. Civ. P. 56).

Accordingly, plaintiffs are not entitled to further discovery.

## B.  State Law Relief

Next, plaintiffs ask the Court to exercise supplemental jurisdiction on its state law

claim in which it argues for a declaratory judgment that the amendments' fee provision is

unconstitutional, under MCR 2.605(A)(1) (stating that "a Michigan court of record may

declare the rights and other legal relations of an interested party seeking a declaratory

judgment, whether or not the relief is or could be sought or granted").  Although the Court

has supplemental jurisdiction over state-law claims under to 28 U.S.C. § 1367(a), it may

decline to exercise supplemental jurisdiction if the state-law claim "substantially

predominates over the claim or claims over which the district court has original

jurisdiction," or if "there are other compelling reasons for declining jurisdiction." Id. at §

1367(c)(2), (c)(4).  Because of the Court's disposition on plaintiffs' federal claim, it is not

inclined to exercise supplemental jurisdiction over plaintiffs' request for state law relief.

Accordingly, the claim will be dismissed without prejudice.

## VI.  Conclusion

For the reasons stated above, defendant's motion is GRANTED.  Plaintiffs' state

law claim is DISMISSED WITHOUT PREJUDICE.

The case manager shall schedule a status conference to determine whether there

are further issues in the case that require resolution.[3]

SO ORDERED.


Dated:  August 16, 2011                         S/Avern Cohn
                                                AVERN COHN
                                                UNITED STATES DISTRICT JUDGE



I hereby certify that a copy of the foregoing document was mailed to the attorneys of
record on this date, August 16, 2011, by electronic and/or ordinary mail.


                                                S/Julie Owens
                                                Case Manager, (313) 234-5160

---

[3]Based on the fact that plaintiffs are unable to rebut the City's negative
secondary effects rationale, it appears all matters are resolved.  However, based on the
parties' stipulation of issues that remain to be tried (Doc. 42), a status conference is
warranted.